Churchill, J.
December 6tb, 1881, Mayer Schutz leased to the defendants all the lofts (4 in number) of Nos. 92 and 94 Green street, New York, for two years, 'from February 1st, 1882, for §6,250 a year, payable quarterly. The lofts were used by the defendants in manufacturing caps and furs. November 16th, 1883, the lease was continued for three additional years until February 1st, 1887. Mayer Schutz died July 19th, 1884, and the plaintiffs are executors and trustees under his will.
The lease contained the following covenant:
“ And it is further agreed and understood, that should the premises hereby leased be damaged by fire, but not to such an extent as to render them untenantable, they shall be repaired without avoidable delay, at the expense of the said party of the first part: that in case such damage by fire shall be so extensive as to render the said premises wholly unfit for occupation, then in such case, the rent having been paid up to the time of such event, shall cease until such time as the said premises shall have been put in tenantable condition; but in case of such destruction of the building containing said premises, by fire or. *20 otherwise, as to render it necessary to rebuild the same, and upon tbe payment of the rent up to such destruction, then and from thenceforth, tins lease shall cease and become null and void.”
On Saturday the 18th day of April, 1884, the leased jrremises were very considerably injured by fire. Witnesses differ much as to the extent of the injury, but the evidence was such as to' make it a proper question for the jury, whether or not the damage by fire was “ so extensive as to -render the premises wholly unfit for occupation.” The defendants immediately rented other premises, to which they removed about 100 cases of goods, slightly damaged, and where they continued their business of manufacturing. The remaining goods, being about 4,000 cases, and valued at $91,000, were surrendered to the Insurance Companies, and were paid for by them as a total loss. The defendant’s loss on goods was finally adjusted April 24th, 1884, when the Insurance Companies took the goods, which they soon after began to remove, but such removal was not complete until May 16th.
The evidence was conflicting as to when the plaintiffs began to repair, and also as to when such rej>airs were completed. It was also conflicting as to whether or not the defendants themselves interfered at all with the repairs, although there seems to be no doubt but that the plaintiffs were somewhat delayed in making repairs by the presence in the building of the goods surrendered to the Insurance Companies. Defendants paid the rent to May 1st, which was accepted by the plaintiffs. This action is brought for the rent of the quarter ending August 1st, 1884, from which the defendants claim to deduct the rent from May 1st to June 16th, at which latter date they claim the repairs were finished. The defendants, at the close of the evidence, asked to go to the jury upon the question whether the premises were rendered wholly unfit for occupation by fire, within the meaning of the covenant in the lease; also for how long a time they remained so unfit for occupation; and whether the defendants were entitled to a reduction of the rent for that time. These requests were denied, and the Court directed a verdict for the plaintiffs for the whole rent, to which the defendants excepted. The grounds of this decision seem to have been two —1st. That the defendants continued to occupy the premises after the fire. 2d. That this occupancy delayed the plaintiffs in-making the necessary repairs.
The terms of the lease did not require that the tenants should abandon their possession to entitle them to a suspension of the rent. Kip v. Marwin, 52 N.Y., 542.
The lease continued in force. The defendants were yet lessees of the building. The only tiring suspended was the accruing of rent. The covenant to repair contained in the lease *21 carried with it an. implied covenant on the part of the defendants, that they would permit the plaintiffs to enter for the purpose of making repairs, and that they would not, by their occupancy or otherwise, hinder or delay the plaintiffs in making repairs, and for a breach of this implied covenant, they would be liable to respond to the plaintiffs in damages.
•The word “ agreed ” used in this covenant is the word of both parties. Pordage v. Cole, 1 Saunders, 319; Bartons. McLean, 5 Hill, 256; Prey v. Johnson, 22 How. 316.
The rule with respect to implied covenants is well stated by Bocees, J., in the latter case (p. 323). “If in a written contract under seal the words manifest a clear intention that a party shall do certain things not expressly stipulated, a covenant to do such acts will be inferred; and an action may be maintained for their non-performance in like manner as if the instrument had contained express' covenants to perform them.
In the case before us, it was a question for the jury, upon conflicting evidence, whether or not the premises were rendered “ wholly unfit for occupation.”
If this question was answered in the affirmative, the defendants were entitled upon the covenant in their leases to a suspension of rent, the period df which was also a question for the jury upon the conflictiug evidence in the case.
The evidence was also conflicting as to whether or not the defendants did hinder or delay the plaintiffs in making repairs and the extent of such delay. If such hinderance was found, the damage to the plaintiffs therefrom, should have been allowed for by lessening the period of suspension of rent and the deduction from rent allowed to the defendants therefor.
These questions should have been submitted to the jury. It was error to direct (as was done) a verdict for the whole rent of the quarter. The judgment should be reversed and a new trial ordered with costs to abide the event.
DANIELS and Beady, JJ., concur.